# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| WILLIE FREEMAN, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:09-CV-160 |
| AGRICOR, INC., | ) |
| Defendant. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Willie Freeman, who is African-American and proceeding *pro se*, brings this suit against his former employer, Defendant Agricor, Inc., asserting that it discriminated against him on the basis of his race and then retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.[1] (Docket # 1.) Agricor now moves for summary judgment on all claims on the basis that Freeman voluntarily executed a Severance Agreement and General Release whereby he agreed to release any and all claims against Agricor in exchange for a severance package. (Docket # 19.) Freeman responded to Agricor's motion on June 25, 2009 (Docket # 24, 25); Agricor opted not to file a reply, and its time to do so has since expired.

For the following reasons, Agricor's motion for summary judgment will be GRANTED.

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

## II. FACTUAL BACKGROUND[2]

Freeman alleges that in June 2007 his supervisor, Dave Sherman, harassed him every day for two weeks "about rules that only applied to [him] and not to [his] other white co-workers." (Pl., Willie Freeman, Mem. of Law Not to Dismiss Case Against Agricor ("Resp. Br.") 1.) Freeman later complained to Agricor's President, Steve Wicks, about the alleged harassment, stating that "if nothing was done about [his] situation," he would file discrimination charges. (Resp. Br. 2.)

Some five months later, on November 28, 2007, Wicks told Freeman that he was being terminated effective December 1, 2007. (Resp. Br. 1; Wickes Aff. ¶ 4) When asked why he was being terminated, Wicks said simply that "we have to part company." (Resp. Br. 1.) When Freeman explained that December 1st was his birthday, Wicks made the termination effective two days later, on December 3, 2007. (Resp. Br. 1.) Wicks also offered Freeman a severance package in exchange for his execution of a release of all claims against Agricor and stated that Agricor would not challenge any claim for unemployment benefits. (Resp. Br. 1.)

On December 3, 2007, Agricor and Freeman entered into a Severance Agreement and General Release (the "Release"), whereby Freeman would receive severance pay of $865.00 per week for twelve weeks; profit sharing in an amount not less than $1,000; and reimbursement for he and his wife's health insurance premiums under COBRA for six months, that is, through June 30, 2008. (Mot. for Summ. J. Ex. A ¶¶ 1, 2.) The Release contained the following provisions dictating Freeman's release of claims:

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Freeman, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

> 6. Employee, his/her executors and assigns, by signing this Agreement hereby releases and forever discharges Company, its affiliates, its subsidiaries, its successors and assigns, officers, directors, agents, employees and representatives from any and all claims, demands, liability, obligation, suits, charges, actions and causes of action, whether known or unknown, past or present, accrued or not accrued, as of the date of this Agreement, including without any limitation, those which are related to or arise out of Employee[']s employment and separation of employment. The matters released include without any limitation any claims under federal, state or local laws, including, but not limited to, the Age Discrimination and Employment Act, 29 USC 621, et seq., Title VII of the Civil Rights Act of 1964, as amended, '2000, et seq., Civil Rights Act of 1991, together with any other common law cause of action.
>
> . . . .
>
> 10. Neither Employee nor any other person acting on Employee[']s behalf shall institute or prosecute, cause to be instituted or prosecuted, or in any way assist in the institution or prosecution of any claim, action or lawsuit against those released herein which asserts a claim that is released in this Agreement. . . .

(Mot. for Summ. J. Ex. A ¶¶ 1, 2.) In addition, the Release contained provisions that encouraged Freeman to consult an attorney if he had any questions about the Release; afforded him twenty-one days within which to consider the Release and seven days after his execution within which he could revoke his consent; and acknowledged that he was entering into the Release "knowingly, voluntarily and without duress or coercion" and that he was not waiving any future claims. (Mot. for Summ. J. Ex. A ¶¶ 11, 12, 13, 15.)

Freeman concedes that Agricor paid him all that he was promised under the Release, stating that he received his final severance payment on February 28, 2008. (Resp. Br. 1.) Three days later, on March 3, 2008, Freeman filed for unemployment benefits. (Resp. Br. 1.) And, approximately one week later, Freeman filed a Charge of Discrimination with the EEOC, checking the boxes for discrimination based on race, retaliation, and disability. (Resp. Br. Ex. 2.) In the narrative section of his Charge, Freeman alleged three things: that he was terminated due

to his race, that his wife was "a potential drain on a new insurance plan," and that he was retaliated against for his repeated complaints of discrimination. (Resp. Br. Ex. 2.)

On April 3, 2008, the Indiana Department of Workforce Development sent a communication to Freeman explaining that his unemployment benefits for the weeks ending March 1, 2008, through April 19, 2008, were not payable pursuant to Indiana Code § 22-4-5-2 because his severance pay and vacation pay, which constituted "deductible income", exceeded his weekly unemployment benefit amount. (Resp. Br. Ex. 4.) Freeman appealed the Department's determination and explained that his severance had ended on February 28, 2008. (Resp. Br. Exs. 5, 6.) Agricor did not challenge the appeal. (Resp. Br. Ex. 6.) The Department then reversed its initial determination, and Freeman was awarded unemployment benefits. (Resp. Br. Ex. 6.)

On March 6, 2009, Freeman filed the instant action in the United States District Court for the Southern District of Indiana, and the case was subsequently transferred to the Northern District of Indiana. (Docket # 1, 13-15.)

### III.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the

4

nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

In its motion for summary judgment, Agricor argues that all of Freeman's claims are barred by the Release signed at the time he was terminated. Freeman, however, seems to think that an individual cannot "sign away [his] right to [a] suit" and that the Release itself is a form of retaliation. (Resp. Br. 1.) He also contends that his "back [was] against the wall" when he was terminated, seemingly challenging the validity of the Release by suggesting that he signed it under duress. (Resp. Br. 2.) In addition, Freeman argues that Agricor retaliated against him by seeking to deny him unemployment benefits *after* he was terminated, a claim not barred by the Release. (Resp. Br. 1-2.)

*A. Freeman's Consent to the Release Was Knowing and Voluntary and Without Duress*

Contrary to Freeman's assertion, an employee may indeed waive his right to sue under anti-discrimination statutes like Title VII, provided that he does so "knowingly and voluntarily."[3] *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 438 (7th Cir. 1997) ("Knowing

---

[3] Though Freeman reflects in his Complaint that he is proceeding solely under Title VII, to the extent he is also advancing a discrimination or retaliation claim under the ADA based on his association with his wife, the same standard for waiver applies. *See Howard v. Health Care Serv. Corp.*, No. 07-CV-2951, 2008 WL 1968776, at *3 (N.D. Ill. May 2, 2008) ("[A] person may validly release potential ADA claims only if [he] does so knowingly and voluntarily." (citing *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1129 (7th Cir. 1997))); *Wisch v. Whirlpool Corp.*, 927 F. Supp. 1092, 1097 (N.D. Ill. 1996).

5

and voluntary consent is . . . a prerequisite to the effectiveness of waivers of federal antidiscrimination claims."); *Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996); *Hudson v. Ind. Limestone Co.*, 143 F. Supp.2d 1032, 1036 (S.D. Ind. 2001). The burden of showing "knowing and voluntary" consent is on the employer; however, since the employer cannot carry the entire burden of proving a negative, "[t]he plaintiff must come forward with specific evidence sufficient to raise a question as to the validity of the release . . . ." *Pierce*, 110 F.3d at 438; *see also Morris-Shaw v. Stora Enso N. Am.*, No. 04-C-704-C, 2005 WL 1957676, at *7 (W.D. Wis. Aug. 15, 2005) ("When an employer raises the existence of a waiver as a defense to a discrimination claim, 'the burden rests on the plaintiff to challenge specifically his voluntary and knowing consent to the release.'" (quoting *Pierce*, 110 F.3d at 438)). In determining whether a consent is "knowing and voluntary", courts look to the "totality of the circumstances", including:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995).

Here, Freeman has failed to come forward with any specific evidence sufficient to raise a question as to the validity of the release, and in any event, the "totality of the circumstances" indicate that Freeman entered into the Release "knowingly and voluntarily". *See, e.g.*, *Baker v. Potter*, No. 02 C 525, 2005 WL 843169, at *15-16 (N.D. Ill. Jan. 20, 2005). The language of the

6

Release is clear, and Agricor specifically encouraged Freeman to consult his attorney if he had any questions. Agricor afforded Freeman up to twenty-one days to consider the Release's terms before signing it (though he apparently used only five days), and he was allowed seven days *after* signing the Release to revoke it, but chose not to do so. *See, e.g.*, *Hudson v. Ind. Limestone Co.*, 143 F. Supp. 2d 1032, 1036-37 (S.D. Ind. 2001) (concluding that the plaintiff's consent to release was knowing and voluntary where the release was limited to the events prior to termination, defendant encouraged her to seek advice of counsel, and she was allowed ample time to consider the release). In fact, in signing the Release, Freeman specifically acknowledged that he did so "knowingly [and] voluntarily". (Mot. for Summ. J. Ex. A ¶ 12.)

Freeman also states that his "back [was] against the wall" when he was terminated and thus seems to be arguing that he signed the Release under duress rendering it invalid. (Resp. Br. 2.) Indiana courts interpret duress as "a deprivation of the free exercise of the victim's own will . . . ."[4] *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1061 (S.D. Ind. 2000) (citing *City of Evansville v. Conley*, 661 N.E.2d 570, 574 (Ind. Ct. App. 1996)). The assertion of duress must be supported by evidence showing that the duress "resulted from the defendant's wrongful and oppressive conduct and not by the plaintiff's necessities." *Id*. "Mere threats, inconvenience, or delay do not constitute duress unless they truly subvert the victim's will." *Id*. (citing *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 283 (Ind. 1983)). Here, Freeman does not point to evidence of any specific act, oppressive conduct, or threat on Agricor's part that supports his assertion of duress. In fact, in signing the Release, Freeman specifically acknowledged that he

---

[4] Because a release is a contract, a plaintiff may raise traditional state law defenses, such as duress, as to its validity. *See, e.g.*, *Gonzalez v. Kokot*, 314 F.3d 311, 316 (7th Cir. 2002); *Morris-Shaw*, 2005 WL 1957676, at *7.

did so "without duress or coercion". (Mot. for Summ. J. Ex. A ¶ 12.)

Furthermore, Freeman exchanged his right to pursue these claims for due consideration. Freeman accepted more than $10,000 in severance payments, a profit-sharing payment in an amount not less than $1,000, and six months of paid health insurance premiums for he and his wife, and he has not offered to return any of it. *See generally Wagner*, 95 F.3d at 532 (stating that in cases where the plaintiff is specifically seeking to rescind the release, generally the normal contract rule requiring the return of any consideration received under the contract applies). And, Freeman does not dispute Agricor's statement that employees who are terminated from Agricor are not entitled to receive severance benefits or other assistance in keeping health benefits. (Wickes Aff. ¶ 5); *see, e.g.*, *Wagner*, 95 F.3d at 531-34 (concluding that an employer may require employees to sign a release as a condition for receiving severance benefits); *Gray v. N. Telecom, Inc.*, No. 95 C 7485, 1998 WL 386359, at *8 (N.D. Ill. July 6, 1998) (granting summary judgment on retaliation claim where plaintiff failed to show that defendant offered severance to employees who did not sign a release of claims against the company).

Therefore, this record compels only one conclusion – that Freeman's consent to the Release was knowing and voluntary and not the product of duress.

### B. The Release Bars All of Freeman's Claims Arising Prior to His Termination

In the Release, Freeman agreed to relinquish "any and all claims . . . as of the date of this Agreement, including . . . those which are related to or arise out of [his] employment and separation of employment." (Mot. for Summ. J. Ex. A ¶ 6.) Courts have consistently found that this type of language is clear and unambiguous. *See, e.g., Morris-Shaw*, 2005 WL 1957676, at *7; *Davis v. Precoat Metals, a Div. of Sequa Corp.*, 328 F. Supp. 2d 847, 853 n.10 (N.D. Ill.

2004); *Schueck Steel Co. v. Glavpro, L.P.*, No. NA 00-240-C H/K, 2003 WL 21277205, at *5 (S.D. Ind. May 22, 2003); *Rodenbeck v. Marathon Petroleum Co.*, 742 F. Supp. 1448, 1457 (N.D. Ind. 1990).

"Releases like the one in this case are purposely written in broad, sweeping language to make clear that an employee is precluded from bringing *any* claim that arises out of the employment relationship or the termination of that relationship." *Morris-Shaw*, 2005 WL 1957676, at *7 (emphasis added); *see Wagner*, 95 F.3d at 533. Absent ambiguity, the court is to look only to the plain language of the Release to ascertain the parties intent. *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC*, No. 1:04-CV-477-TS, 2009 WL 1107796, at *6 (N.D. Ind. Apr. 24, 2009); *Ball v. Versar, Inc.*, No. IP 01-0531-C H/K, 2003 WL 1888987, at *4-5 (S.D. Ind. Mar. 26, 2003); *Zollman v. Geneva Leasing Assocs., Inc.*, 780 N.E.2d 387, 392 (Ind. Ct. App. 2002).

Consequently, there can be no doubt that the Release applies to *all* of Freeman's claims that arose prior to his execution of the document. *See, e.g.*, *Shaw v. Runyon*, No. 94 C 7213, 1995 WL 144515, at *5 (N.D. Ill. Mar. 29, 1995); *see generally Wagner*, 2005 WL 843169, at *14 (articulating that "where valid, . . . waivers promote the important federal policy of encouraging the voluntary resolution of discrimination claims" (internal quotations marks and citation omitted)).

### C. *Freeman Fails to Produce Any Evidence of a Post-Termination Retaliation Claim*

Freeman also complains that after Agricor told him that it would not challenge his application for unemployment benefits, Agricor retaliated against him after his termination by incorrectly reporting the amount of his severance payments to the Indiana Department of

Workforce Development. (Resp. Br. 2.) Though the Release specifically excludes "a release or waiver of rights and claims that arise after the Agreement is signed" (Mot. for Summ. J. Ex. A ¶ 15), here there is simply *no* evidence to support a retaliation claim against Agricor with respect to Freeman's unemployment benefits.

To explain, Freeman's assertions of post-termination retaliation seem to hinge on his belief that Agricor wrongfully reported his severance payments as "deductible income" to the Indiana Department of Workforce Development. (Resp. Br. 2.) But under Indiana Code § 22-4-5-2, severance payments constitute "deductible income" and thus *should be* deducted from any unemployment benefit in accordance with that statute. (Resp. Br. Ex. 4.)

It does appear, however, that some type of error occurred with respect to the Department's initial calculation of Freeman's unemployment benefits. That is, the Department's initial communication reflected that Freeman received twenty weeks of severance, rather than twelve. (Resp. Br. Ex. 4.) But the Department promptly corrected this error when Freeman appealed it, and Freeman admits that Agricor did not challenge his appeal and that he was successful in obtaining his unemployment benefits. (Resp. Br. 2, Ex. 6.) Simply, Freeman has failed to produce sufficient evidence that could cause a reasonable juror to conclude that Agricor retaliated against Freeman in connection with his unemployment benefits application. *See generally Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (emphasizing that summary judgment "is the 'put up or shut up' moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events" (citations omitted)).

In sum, by accepting a severance package and signing the Release, Freeman voluntarily

and knowingly gave up any and all claims that may have arisen prior to his signing the Release. And, the record is devoid of any evidence to support a post-termination retaliation claim against Agricor. Therefore, Agricor's motion for summary judgment on all claims will be granted.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket # 19) is GRANTED.   The Clerk is directed to enter a judgment in favor of Defendant and against Plaintiff.

SO ORDERED.

Enter for August 24th, 2009.

S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
